IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA by and for the use of TECHNIQUEX SPECIALTY FLOORING, INC., | : : : |
| Plaintiff, | : |
| v. | : 3:21-CV-00286 |
| | : (JUDGE MARIANI) |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | : : |
| Defendant. | : |

## MEMORDANDUM OPINION

### I. INTRODUCTION

Pending before the Court is Defendant Philadelphia Indemnity Company's Motion to Dismiss (Doc. 9). Philadelphia argues that Plaintiff Techniquex Specialty Flooring's Complaint is untimely because it was filed after the Miller Act's one-year statute of limitation and Techniquex has not pled facts sufficient to support equitable tolling. (Doc. 9 at 2-4). For the reasons set forth below, the court will deny Philadelphia's Motion to Dismiss (Doc. 9).

### II. FACTUAL ALLEGATIONS

Techniquex entered into a subcontract with Benaka, who had a prime contract with the Department of Defense ("DOD"), on or about August 17, 2015, to complete interior and exterior epoxy flooring work at the Mission Operation Facility on Building 1A at the Tobyhanna Army Depot in Tobyhanna Pennsylvania ("the Project"). (Doc. 1 at ¶¶ 9, 10; see also Doc. 1-2). Philadelphia Indemnity issued Payment Bond No. PB12048700012 with

Benaka as the principal and the United States as the obligee, for the labor and materials provided by contractors to the Project. (*Id.* at ¶¶ 26-27). Techniquex was a subcontractor for Benaka and provided labor and materials for the Project, which made Techniquex "a claimant under the Bond and an intended beneficiary of the Bond." (*Id.* at ¶ 28). "Under the Bond, Philadelphia Indemnity is obligated, as surety for Benaka, to pay Techniquex for all labor and materials that Techniquex provided on the Project for Benaka's benefit and that Benaka has failed to pay Techniquex." (*Id.* at ¶ 29).

After Techniquex completed Phase C of the Project, DOD ordered that the Project be "temporarily suspended until further notice" on or about October 11, 2017. (*Id.* at ¶ 11). At the time DOD suspended the Project, Techniquex had completed Phases A through C of its work, which constituted approximately 90% of Techniquex's work on the Project. (Doc. 1 at ¶¶ 12, 13). Techniquex still had to perform Phases D, E(a), and E(b) to complete its obligations under the subcontract. (*Id.* at 12).

"At the time of the suspension of the Project, Benaka was withholding portions of the amounts owed to Techniquex for its work on the Project, including retainage withheld for work that Techniquex properly performed in Phases A through C, and which was accepted by Benaka and [DOD]." (*Id.* at ¶ 14). "Upon the Project being recommenced more than two years later, Techniquex initiated and responded to multiple communications with Benaka regarding the previously agreed upon Project schedule." (*Id.* at ¶ 15). On or about October 23, 2020, however, "in complete disregard of these scheduling communications related to

the completion of the Project, Benaka sent a 48-hour 'Notice to Cure' letter to Techniquex demanding that Techniquex comply with an unreasonable acceleration to the originally agreed-upon work durations in the Project schedule." (*Id.* at ¶ 16). Techniquex expressed its willingness to complete the Project according to Benaka's updated scheduling demands "by offering to redirect resources from other projects and perform work during 'off hours' such as evenings, weekend, and national holidays." (Doc. 1 at ¶ 17). Techniquex remained ready, willing, and able to complete the Project in accordance with Benaka's scheduling demands. (*Id.* at ¶ 19). Similarly, "[t]hroughout Techniquex's performance of work on the Project, including during the hiatus caused by [DOD's] temporary halt to the Project, Techniques was ready, willing, and able to perform its work but was negatively impacted, frustrated, and delayed by Benaka's mismanagement of the Project," which included "Benaka's failure to properly coordinate and communicate with Techniquex regarding the remaining work to be completed." (*Id.* at ¶ 18).

In its Notice of Termination for Cause letter, dated November 4, 2020, "Benaka wrongfully terminated Techniquex without cause." (*Id.* at ¶ 20). According to Article 15 of the Subcontract, "Benaka's wrongful termination of Techniquex is deemed a 'cancellation for convenience' and Techniquex is entitled to be paid the reasonable value of all work in place." (*Id.* at ¶ 21). To date, however, Techniquex has only been paid $480,049.08, but the value of its completed work is $881,806.03, resulting in an unpaid balance of $401,756.95. (Doc. 1 at ¶ 22). "Techniquex submitted Application for Payment No. 8 on or

about December 17, 2020, seeking payment of all amounts remaining owed under the Subcontract but Benaka failed and refused to make payment of the amounts owned to Techniquex." (*Id.* at ¶ 23).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14

4

(3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-787 (quoting *Iqbal,* 556 U.S. at 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

IV. ANALYSIS

In its Motion to Dismiss, Philadelphia asserts that Techniquex's suit is time barred by the Miller Act's statute of limitations because the limitations provision is jurisdictional and, in the alternative, because equitable tolling does not excuse its late filing. (Doc. 9 at 2-4). Techniquex argues that the Act's statute of limitations is not jurisdictional and that the equitable tolling excuses its late filing because it was misled by Benaka. (Doc. 12 at 1-3).

"The Miller Act requires every contractor on a federal government contract exceeding $100,000 to provide '[a] payment bond with a surety ... for the protection of all persons supplying labor and material in carrying out the work provided for in the contract.'" *U.S. ex rel. E & H Steel Corp. v. C. Pyramid Enters., Inc.*, 509 F.3d 184, 186 (3d Cir. 2007) (quoting 40 U.S.C. § 3131(b)(2)). Specifically, the Miller Act provides that:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133(b)(1).

### a. Whether the Miller Act's Statute of Limitations is Jurisdictional

The Miller Act contains a statute of limitations provision that requires actions to "be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 20 U.S.C. § 3133(b)(4).

The law of the Third Circuit "has been that the [Miller] Act's limitations period is a jurisdictional prerequisite to suit." *U.S. ex. rel. Liberty Mech. Servs., Inc. v. North Am. Ins. Co.*, 2 F.Supp.3d 610, 614 (E.D.Pa. 2014) (collecting cases). However, recent Supreme Court precedent has called the Third Circuit's previous decision on this issue into question. As explained by the Eastern District of Pennsylvania:

> In recent years, the Supreme Court has frequently stated that courts must conduct a thorough analysis before holding that a statute's requirements are jurisdictional. E.g., *Henderson ex rel. Henderson v. Shinseki*, [562 U.S. 428], 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011), *Holland v. Florida*, 560 U.S. 631, 645-49, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 502, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). In doing so, the Court acknowledged the "drastic" "consequences that attach to the jurisdictional label," and thus, has "tried ... to bring some discipline to the use of this term." *Henderson ex rel. Henderson*, [562 U.S. at 435]. Given those consequences, the Court has ruled that, as a general matter, "a threshold limitation on a statute's scope shall count as jurisdictional" only when a legislature clearly so states. *Arbaugh*, 546 U.S. at 502.

*Liberty Mech. Servs., Inc.*, 2 F.Supp.3d at 614. In *Arbaugh*, the Supreme Court issued a "readily administrable bright line" rule to determine whether a limitations provision in a particular statute is jurisdictional:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006) (footnote and citation omitted). In its application of this jurisdictional "bright line" rule, the Supreme Court "has consistently

7

required an extensive analysis before deciding a requirement to be jurisdictional." *Liberty Mech. Servs., Inc.*, 2 F.Supp.2d at 614-15 (collecting cases).

The consistent application of this bright line rule is at odds with the Third Circuit's 1958 holding that it was "inclined to agree" that "time limit for starting litigation under [the Miller Act] is really a condition precedent" and thus jurisdictional. *U.S. for the Use of Soda v. Montgomery*, 253 F.2d 509, 512 (3d Cir. 1958). In *Soda*, the Third Circuit did not engage in "extensive analysis before deciding a requirement to be jurisdictional,"; instead, "*Soda* lacks any jurisdictional analysis at all." *Liberty Mech. Servs., Inc.*, 2 F.Supp.3d at 615. According to the *Liberty Mechanical* Court, "there is no way to reconcile [*Soda*'s] exceedingly brief jurisdictional discussion with intervening Supreme Court case law" and "it appears virtually certain that *Soda* is irreconcilable with intervening Supreme Court case law and is effectively non-precedential." *Id.* at 617, 619.

Furthermore, courts across have held that the Miller Act's one-year statute of limitations is non-jurisdictional in light of *Arbaugh*. For example, the Ninth Circuit held that "[a] proper analysis of the Miller Act's statute of limitations makes clear that it is a claim-processing rule, not a jurisdictional requirement" and described the provision as a "'run-of-the mill statute of limitations.'" *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1177 (9th Cir. 2013) (quoting *Holland v. Florida*, 560 U.S. 631, 647 (2010). Many district courts have reached the same conclusion as the Ninth Circuit as well. *See, e.g., U.S. ex rel. Diversified Lenders, LLC v. SureTec Ins. Co.*, 2018 WL 6070340, at *3

(M.D.Pa. Nov. 20, 2018) ("Thus, the Court is bound by *Arbaugh* ... and the one-year statute of limitations shall be treated as limitational and not jurisdictional.");

*United States and Gilbane Fed. Co. v. Berkley Reg'l Ins. Co.*, 2016 WL 7229123, at *3 (M.D.Fla. March 25, 2016) (holding that the Miller Act's statute of limitations is non-jurisdictional*); United States v. Preferred Builders Grp., LLC*, 2015 WL 12791746, at *2 (S.D.W.V. April 30, 2015) ("The Court adopts the majority view that the statute of limitations in the Miller Act is not jurisdictional in nature."); *United States v. Cannon Mgmt. Grp., LLC*, 2013 WL 4499739, at *4 (S.D.Oh. Aug. 21, 2013) (holding that the Miller Act's one-year statute of limitations requirement is non-jurisdictional); *U.S. ex rel. Tymatt Indus., Inc. v. Allen v. Shariff Const. Servs., LLC*, 2013 WL 4110551, at *3 (D.Md. Aug. 13, 2013) (same); *U.S. ex rel. Steel Smith Inc. v. Holliday Const. LLC*, 2010 WL 1379798, at *3 (S.D.Miss. March 30, 2010) ("This one-year statute of limitations is limitational and not jurisdictional; accordingly, a party may be estopped from relying on the one-year statute of limitations if sufficient equitable considerations exist to warrant estoppel.").

In light of recent Supreme Court caselaw and the trend across district courts to find the Miller Act's statute of limitations non-jurisdictional, the Court finds that the Miller Act's one-year statute of limitations period is non-jurisdictional. Thus, the Court will consider Techniquex's claim for equitable tolling.

### b. Equitable Tolling

"Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has passed." *U.S. ex rel. Stan & Son Const., LLC v. Pennsylvania Nat. Mut. Ins. Co.*, 2012 WL 1068710, at *5 (D.N.J. March 28, 2012) (quotation omitted). "Equitable tolling is appropriate in three situations: (1) when the defendant has actively misled the plaintiff respecting the facts which comprise the plaintiff's cause of action; (2) when the plaintiff in some extraordinary way has been prevented from asserting his rights; and (3) when the plaintiff has timely asserted his rights in the wrong forum." *Becker v. Chicago Title Ins. Co.*, 2004 WL 228672, at *4 (E.D.Pa. Feb. 4, 2004) (citing *U.S. v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998); *see also Harriot v. Bank of America Home Loans*, 2013 WL 4812461, at *4 n.2 (M.D.Pa. Sept. 9, 2013). The first ground for equitable tolling "appears to be the same, in all important respects" to equitable estoppel, which "excuses late filing where such tardiness results from active deception on the part of the defendant" and "what courts describe as 'equitable tolling' is encompassed by the latter two parts of our Circuit's doctrine." *Liberty Mech. Servs., Inc.*, 2 F. Supp.3d at 619 (internal citations and quotations omitted). The extraordinary circumstances standard may be met "where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her ..." *Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007) (quotation omitted).

10

Here, Techniquex argues that "the Miller Act's limitations period should be equitably tolled because ... Techniquex's Complaint properly pleads on its face both that Techniquex exercised reasonable diligence in investigating and bringing its claims and the second principal factor in the equitable tolling factor has been satisfied." (Doc. 12 at 3; *see also* Doc. 1 at ¶ 41). According to Techniquex, it did not file suit within the limitations period because

> there was simply no way for Techniquex to know that the statute of limitations had started running unless it knew that October 11, 2017 was going to be the last day it performed labor or furnished materials. Techniquex had no reason to. Based on Techniquex's knowledge at all relevant times herein, it would have been premature for it to pursue its Miller Act claim prior to being wrongfully terminated on November 4, 2020.

(Doc. 12 at 2).

In response, Philadelphia argues "the pleadings reveal on their face that Techniquex failed to plead any facts that can support a plausible claim for equitable relief where no extraordinary circumstances exist that would otherwise toll its late-filed suit." (Doc. 9 at 12). Philadelphia asserts:

> All that the Miller Act requires was that Techniquex wait 90 days after the day on which it last performed the work for which it makes its claim, but not more than one year after the last of the labor and materials were furnished. If Techniquex wanted to pursue its Miller Act rights against the Surety, it could have done so any time after January 9, 2018 (90 days after October 11, 2017). If October 11, 2017 happened to also be the last date that Techniquex furnished labor or material to the Project, then Techniquex needed to pursue its Miller Act rights no later than October 11, 2018. ... Techniquex had all available information necessary for it to pursue its rights against the Surety within that period. Its decision to not pursue its rights was a failure of its own making and nothing that Techniquex has pled can overcome this fatal point.

11

(Doc. 13 at 6).

At the early stage, the Court is satisfied that Techniquex has adequately pleaded facts sufficient to establish a plausible claim for equitable estoppel. Techniquex alleges that it was "at all times ready, willing, and able to continue its work on the Project and intended to do so, having received no notice to the contrary" and during the Project's suspension, "Techniquex reasonably believed that the Project would be restarted and Techniquex would be paid all amounts owed under the Subcontract[.]" (Doc. 1 at ¶¶ 37, 38). Furthermore, Techniquex alleges that, "[i]n reasonable reliance on the expected recommencement of the Project and with the reasonable expectation that Benaka would allow Techniquex to continue with the completion of the Project in accordance with the terms of the Subcontract, Techniquex did not assert a Bond claim against Philadelphia during the period of Project suspension." (*Id.* at ¶ 39).

Based on these allegations in the Complaint, Techniquex has plausibly alleged that it was misled by Benaka in that it had no reason to believe that, once the Project restarted, it would be able to complete its work on the Project. Techniquex still had to finish Phases D, E(a), and E(b) before the work it contracted to do under the contract was completed and, because of this, it is plausible that Techniquex did not know they had a Miller Act claim due to Benaka's conduct at the time the Project was temporarily suspended. (Doc. 1 at ¶ 12; Doc. 12 at 12). Indeed, Benaka sent a 48-hour "Notice to Cure" letter on October 23, 2020, that contained an accelerated schedule for completion of the remainder of Techniquex's

work on the Project and Techniquex "promptly" responded with a revised schedule "that met Benaka's schedule acceleration demands." (Doc. 1 at ¶¶ 16-17, 19). This plausibly alleges that Benaka "actively misled" Techniquex before Benaka ultimately terminated Techniquex less than two weeks after it sent the Notice to Cure.

The Third Circuit has cautioned that, "because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion." *In re Cmty. Bank of Northern Virginia*, 622 F.3d 275, 301-02 (3d Cir. 2010) (citing *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006); *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004)). That is the case here. Evidence beyond the pleadings is needed for the Court to fully evaluate the merits of whether equitable tolling excuses Techniquex's late filing. For example, it is unclear on exactly what date Techniquex last supplied labor or materials for the Project because they only allege "[s]hortly after Techniquex had completed Phase C of its scope of work on or about October 11, 2017 ...", which only indicates a general time around which Techniquex last supplied labor or materials. (Doc. 1 at ¶ 11); *see Western Surety Co. v. Hudson Ins. Co.*, 2017 WL 1380413, at *3 (D.N.J. April 10, 2017) ("Courts have held that the 'last date' of work for purposes of the statute of limitations is the date on which the plaintiff last physically worked or supplied materials, regardless of the expectations of the parties or circumstances surrounding the termination of work." (internal citations and quotations omitted)); *Stan &*

*Son Const., LLC*, 2012 WL 1068710, at *4 (explaining that although the plaintiff claimed June 15, 2010, was the last day of the payroll period for the project and the date on which the statute of limitations started to run on its Miller Act claim, the last day plaintiff actually performed labor for the project was June 11, 2010).

Because Techniquex has plausibly alleged that equitable tolling may excuse its late filing of the above-captioned action, the Court will deny Philadelphia's Motion to Dismiss.

## V. CONCLUSION

For the aforementioned reasons the Court will deny Philadelphia's Motion to Dismiss (Doc. 9). A separate Order will follow.

*[signature]*

Robert D. Mariani
United States District Judge